UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 13-4206      Caption [use short title]

Motion for: Expedited Appeal and Stay Pending Appeal

Set forth below precise, complete statement of relief sought:

Appellant requests an order expediting the appeal

and staying the discovery of the district court's

October 25, 2013 Order pending appeal.

U.S. Commodity Futures Trading Commission

v.

Parnon Energy Inc., et al.

v.

Castleton Commodities Int'l LLC, et al.

MOVING PARTY: Plains All American Pipeline, LP    OPPOSING PARTY: Parnon Energy Inc., et al.

[ ] Plaintiff    [ ] Defendant
[✔] Appellant/Petitioner    [ ] Appellee/Respondent

MOVING ATTORNEY: Hilary Preston    OPPOSING ATTORNEY: Christine M. Ryall

[name of attorney, with firm, address, phone number and e-mail]

Vinson & Elkins LLP
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
(212) 237-0000    hpreston@velaw.com

U.S. Commodity Futures Trading Commission
1155 21st St., NW
Washington, D.C. 20581
(202) 418-5523 cryall@cftc.gov

Court-Judge/Agency appealed from: United States District Court for the SDNY - Honorable William H. Pauley, III

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
[✔] Yes [ ] No (explain): _____

Opposing counsel's position on motion:
[ ] Unopposed [✔] Opposed [ ] Don't Know
Does opposing counsel intend to file a response:
[✔] Yes [ ] No [ ] Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:
Has request for relief been made below? [✔] Yes [ ] No
Has this relief been previously sought in this Court? [ ] Yes [✔] No
Requested return date and explanation of emergency: 11/20/2013

Stay pending appeal needed to prevent production

of nonparty material and avoid irreparable harm

Is oral argument on motion requested? [ ] Yes [✔] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [ ] Yes [✔] No If yes, enter date: _____

Signature of Moving Attorney:
_____ Date: 11/13/13    Service by: [✔] CM/ECF [ ] Other [Attach proof of service]

ORDER

IT IS HEREBY ORDERED THAT the motion is GRANTED DENIED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____    By: _____

Form T-1080 (rev. 7-12)

# No. 13-4206

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

U.S. COMMODITY FUTURES TRADING COMMISSION,

Plaintiff-Appellee,

v.

PARNON ENERGY INC., ARCADIA PETROLEUM LTD., ARCADIA ENERGY (SUISSE) SA, NICHOLAS J. WILDGOOSE, JAMES T. DYER,

Defendants-Appellees,

v.

CASTLETON COMMODITIES INTERNATIONAL LLC, VITOL INC., VITOL CAPITAL MANAGEMENT LTD., PLAINS ALL AMERICAN PIPELINE, LP,

Appellants.

On Appeal from the United States District Court for the Southern District of New York, No. 11-Civ.-3543, the Hon. William H. Pauley III, U.S. District Court Judge

## APPELLANT PLAINS ALL AMERICAN PIPELINE, LP'S EMERGENCY MOTION FOR EXPEDITED APPEAL, STAY PENDING APPEAL, AND/OR TEMPORARY ADMINISTRATIVE STAY PENDING FULL CONSIDERATION OF THE MOTION FOR STAY

Hilary L. Preston
Armita S. Cohen
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel: (212) 237-0000
Fax: (212) 237-0100
hpreston@velaw.com
acohen@velaw.com

*Counsel for Appellant*
*Plains All American Pipeline, LP*

November 13, 2013

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, Plains All American Pipeline, LP states that it has no parent corporation and that no publicly held corporation owns 10% or more of an interest in the common units of Plains All American Pipeline, LP.

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

ARGUMENT ...................................................................................................... 7

   I.   This Court Should Stay the District Court's Order Compelling
       Production of Plains's Proprietary Business Information Pending an
       Expedited Appeal ..................................................................................... 7

      A.  Without a Stay, Plains Will Suffer Irreparable Injury ........................... 8

      B.  Plains Has Strong Grounds for an Appeal ............................................ 10

      C.  A Stay Would Not Substantially Harm the Class-Action Plaintiffs ........ 18

      D.  A Stay Would Be in the Public Interest .................................................. 19

   II.  The Court Should Schedule This Appeal for Expedited Briefing ................ 19

CONCLUSION .................................................................................................... 20

EXHIBITS

Exhibit 1 (Declaration of  Hilary L. Preston)

Exhibit 2 (Hearing Transcript, July 1, 2013)

Exhibit 3 (Declaration of Lawrence J. Dreyfuss)

Exhibit 4 (Court Order of June 11, 2013)

Exhibit 5 (Court Order of October 25, 2013)

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Abernathy Thomas Eng'g Co. v. Pall Corp.*,
   103 F. Supp. 2d 582 (E.D.N.Y. 2000)........................................................ 16

*Advanced Semiconductor Prods., Inc. v. Tau Labs., Inc.*,
   229 U.S.P.Q. 222 (N.D. Cal. 1986)............................................................ 17

*American Standard Inc. v. Pfizer Inc.*,
   828 F.3d 734 (Fed. Cir. 1987) ............................................................. 16, 17

*Apex Oil Co. v. DiMauro*,
   110 F.R.D. 490 (S.D.N.Y. 1985)............................................................... 12

*Application of Am. Tobacco Co.*,
   866 F.2d 552 (2d Cir. 1989) .................................................................... 20

*Application of Gianoli Aldunate*,
   3 F.3d 54 (2d Cir. 1993) ......................................................................... 20

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
   171 F.R.D. 135 (S.D.N.Y. 1997)............................................................... 16

*Bimbo Bakeries USA, Inc. v. Botticella*,
   613 F.3d 102 (3d Cir. 2010) .................................................................... 19

*BSN Med., Inc. v. Parker Med. Assocs., LLC*,
   No. 10 Misc. 15, 2011 WL 197217 (S.D.N.Y. Jan. 19, 2011).................. 14

*Catalyst & Chemical Servs., Inc. v. Global Ground Support*,
   350 F. Supp. 2d 1 (D.D.C. 2004) ...................................................16-17, 18

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949) ................................................................................. 8

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996).................................................................. 14

*Cusumano v. Microsoft Corp.*,
   162 F.3d 708 (1st Cir. 1998) ................................................................... 14

iii

*Duplan Corp. v. Deering Milliken*,
    397 F. Supp. 1146 (D.S.C. 1975) ............................................................. 12

*EM Ltd. v. Argentina*,
    695 F.3d 201 (2d Cir. 2012) ......................................................... 8

*Everco Indus. v. O.E.M. Prods. Co.*,
    362 F. Supp. 204 (N.D. Ill. 1973) ................................................. 17

*Gelb v. Am. Tel. & Tel. Co.*,
    813 F. Supp. 1022 (S.D.N.Y. 1993) .......................................... 17

*Hirschfeld v. Bd. of Elections*,
    984 F.2d 35 (2d Cir. 1993) ................................................... 7, 10

*In re Adelphia Commc'ns Corp.*,
    361 B.R. 337 (S.D.N.Y. 2007) ................................................. 10

*In re Air Crash at Bell Harbor*,
    490 F.3d 99 (2d Cir. 2007) ......................................................... 8

*In re Graphics Processing Units Antitrust Litig.*,
    No. C 06-07417, 2007 WL 2127577 (N.D. Cal. July 24, 2007) .............. 15

*In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Litig.*,
    821 F.2d 1422 (9th Cir. 1987) ............................................. 10, 19

*In re Remington Arms Co.*,
    952 F.2d 1029 (8th Cir. 1991) ............................................ 12, 15

*In re Teligent, Inc.*,
    640 F.3d 53 (2d Cir. 2011) ..................................................... 13

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007) ...................................................... 7

*Int'l Bus. Machs. Corp. v. Johnson*,
    629 F. Supp. 2d 321 (S.D.N.Y. 2009) ......................................... 9

*John Doe Agency v. John Doe Corp.*,
    488 U.S. 1306 (1989) ......................................................... 10, 19

*Johnson v. Nyack Hosp.*,
    169 F.R.D. 550 (S.D.N.Y. 1996) .............................................................. 13

*LaRouche v. Kezer*,
    20 F.3d 68 (2d Cir. 1994) ........................................................................ 7

*Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*,
    129 F.R.D. 528 (E.D. Wis. 1990) ............................................................ 13

*Madanes v. Madanes*,
    186 F.R.D. 279 (S.D.N.Y. 1999) .............................................................. 12

*Marshall v. Westinghouse Elec. Corp.*,
    576 F.2d 588 (5th Cir. 1978) ................................................................... 13

*Medtech Prods. Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008) ..................................................... 16

*Medtronic, Inc. v. Gibbons*,
    684 F.2d 565 (8th Cir. 1982) ..................................................................... 9

*Merck & Co., Inc. v. SmithKline Beecham Pharms. Co.*,
    No. C.A. 15443-NC, 1999 WL 669354 (Del. Ch. 1999) .................... 16, 17

*Midwest Gas Servs., Inc. v. Indiana Gas Co.*,
    No. IP99-0690-C-Y/G, 2000 WL 760700 (S.D. Ind. Mar. 7, 2000) ......... 15

*Mohammed v. Reno*,
    309 F.3d 95 (2d Cir. 2002) ........................................................................ 7

*Nat'l Elevator Cab & Door Corp. v. H&B Inc.*,
    282 Fed. App'x 885 (2d Cir. 2008) ........................................................... 9

*Police and Fire Ret. Sys. Of City of Detroit v. SafeNet, Inc.*,
    No. 06-civ-5797, 2010 WL 935317 (S.D.N.Y. Mar. 12, 2010) ............... 19

*Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*,
    637 F.3d 604 (5th Cir. 2011) ................................................................... 16

*Thapa v. Gonzales*,
    460 F.3d 323 (2d Cir. 2006) ...................................................................... 7

*Time Warner Cable of New York City v. M.D. Elecs., Inc.*,
   101 F.3d 278 (2d Cir. 1996) ................................................................. 20

*U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts., Inc.*,
   673 F.3d 158 (2d Cir. 2012) ................................................................. 18

*U.S. Sec. & Exch. Comm'n v. TheStreet.com*,
   273 F.3d 222 (2d Cir. 2001) ................................................................. 11

*United States v. Philip Morris Inc.*,
   314 F.3d 612 (D.C. Cir. 2003) ............................................................... 18

*United States v. United Fruit Co.*,
   410 F.2d 553, 557 & n.11 (5th Cir. 1969) ................................................. 17

## **Rules**

Fed. R. App. P. 2 ................................................................................... 1

Fed. R. App. P. 8(a)(2) ........................................................................... 1

Fed. R. Civ. P. 26(b)(2) ......................................................................... 14

Fed. R. Civ. P. 26(c) .............................................................................. 12

Fed. R. App. P. 26.1 ................................................................................ i

Pursuant to Fed. R. App. P. 2 and 8(a)(2), appellant Plains All American Pipeline, LP ("Plains") hereby submits this emergency motion for entry of an order expediting its appeal of the October 25, 2013 Order of the district court authorizing production of Plains's confidential business documents; for a stay pending that expedited appeal; and, if necessary, for an immediate administrative stay pending the Court's consideration of this motion.  Because the defendants below could produce the documents in question at any time, Plains respectfully requests that the Court act by Wednesday, November 20, or as soon as possible.

## INTRODUCTION

Plains is before this Court in a final attempt to protect its highly confidential and competitively sensitive business information from disclosure to a putative class of plaintiffs—a class almost certain to include Plains's competitors. Ordinarily, as a nonparty to the litigation, Plains would have received a nonparty subpoena, giving it the ability to make decisions about which of its competitively sensitive materials are relevant to the litigation.  Had that been the case, Plains would have been positioned to move to quash overbroad discovery requests and negotiate a protective order to adequately protect any information produced in litigation.  Instead, Plains's documents were produced, wholesale, to the defendants in that class action, Parnon Energy Inc. et al. (collectively "Parnon"), by the U.S. Commodity Futures Trading Commission ("the Commission")—years

1

after Plains had provided the Commission with approximately one million pages of proprietary information *as a third-party witness in a confidential investigation*.

The Commission has taken the position that it is the "producing party" of documents obtained in the course of its investigation, and that it may make decisions about "the appropriate use of its documents as it deems appropriate." *See* Preston Decl., Ex. A (Ltr. from Christine M. Ryall to the Honorable William H. Pauley (July 9, 2013) (Exhibit 1)). The agency deemed it appropriate simply to hand over millions of pages of Plains's proprietary business records to Parnon— without giving Plains an opportunity to object—including documents it admits "maybe were not relevant." Tr. of July 1, 2013 Hearing in Case No. 11-3600, Doc. 147 ("Hearing Tr.") (Exhibit 2), at 51:18 (counsel for the Commission); *see also id.* at 11:7-8 ("[T]here may be some things in there that slipped through the cracks."); *id.* at 14:17-18 ("I can't stand here and tell you that we have looked at all five million documents."); *id.* at 51:23-25 ("The reason we didn't review [all of the audio files] is it's hundreds or tens of thousands of hours of audio involved in that."). Now, with the benefit of a district court order that relieves the party seeking discovery from making *any* particular showing of relevance, Parnon plans to disclose, in full, that same set of highly confidential records to the class-action plaintiffs.

Several of the nonparty objectors have appealed the district court's decision. In the absence of a stay of the district court's order, Parnon will produce all of these nonparties' sensitive commercial information and trade secrets to class-action plaintiffs pending these appeals—subjecting them to irreparable harm.

## BACKGROUND

Beginning in 2008, the U.S. Commodity Futures Trading Commission commenced a national crude oil investigation and issued requests and subpoenas to over 60 companies who are nonparties to this action.  *See* Case No. 11-cv-03600, Doc. 133, at 4.  Those requests were very broad, encompassing information related to confidential customer contracts and pricing, proprietary business records, committee reports and minutes, detailed company reports and data, and emails and other internal communications discussing confidential commercial information. *See* Case No. 11-cv-3600, Doc. 119, at ¶ 7 ("Dreyfuss Decl.") (Exhibit 3).

The Commission used its investigative power to issue subpoenas and requests to Plains for documents and information.  Even though it complied with the government's request, Plains acted at all times with extreme reservation and concern for the protection of its confidential and proprietary records.  *Id.* at ¶ 4. Plains provided its highly proprietary information with the understanding that it would not be disclosed to the public.  Plains also made a timely request of the Commission to treat its documents and other information confidentially, and filed

timely notices with the Commission's Freedom of Information Act ("FOIA") compliance office indicating that the documents are exempt from disclosure in response to FOIA requests. *Id.*

In May 2011, the Commission filed a civil action under the Commodity Exchange Act alleging claims of market manipulation against defendants Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose, and James T. Dyer (collectively "Parnon"). *See U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc., et al.*, No. 11-civ-3543 (S.D.N.Y.) ("the Commission Action"). The nonparty objectors, including Plains, are not parties to that action.

In April 2013, the Commission produced several million nonparty files (including over one million pages of Plains's documents and other information), some of which were produced without *any* review of the documents, much less a relevancy determination, and many of which were produced with no prior notice or opportunity to object afforded to the relevant nonparty. *See, e.g.*, Hearing Tr., at 24:9-24 (stating that relevant documents were housed by the Commission in 46 different databases and consisted of nearly six million documents); *id.* at 51:22-25 (stating that "hundreds or tens of thousands of [nonparty] audio" recordings were produced to Defendants without review). Additionally, although the Commission sought "advice" from some nonparties about the appropriate designation of their

4

materials under the protective order, it maintained that it had the unilateral right to designate or de-designate the nonparties' documents.  Preston Decl., Ex. A at 2-3.[1]

Following on the heels of the Commission Action, a putative class of plaintiffs filed a suit against Parnon asserting similar claims.  *See In re: Crude Oil Commodity Futures Litig.*, No. 11-civ-3600 (S.D.N.Y.) ("the Class Action").  In that action, putative class plaintiffs ("class-action plaintiffs") submitted 136 requests for documents and other information to Parnon, including a blanket request seeking production of, in pertinent part, all documents provided to Parnon by the Commission in the Commission Action.  Plains learned of those requests after the Commission had already produced its documents to Parnon.  *See* Preston Decl. Ex. A at 3.  On June 11, 2013, the district court ordered any nonparties to file any objections to the document requests with the court.  *See* Class Action, Doc. 96; Commission Action, Doc. 67 (attached as Exhibit 4).  Plains (along with several other non-parties) filed timely objections, and Plains moved for a protective order.[2] *See* Class Action, Docs. 117, 118; Commission Action, Docs. 88, 89.

---

[1] Plains and the Commission have since reached an agreement whereby Plains will provide the Commission with designations for its own documents under the Protective Order.  *See* Class Action, Doc. 167 at 11; Commission Action. 11-3543, Doc. 142 at 11 (Ltr. from Hilary Preston, Christine Ryall and Elizabeth Bradshaw to the Honorable William H. Pauley (July 18, 2013) at 1).

[2] "Plains file[d] these objections and motion for protective order, rather than a motion to intervene and for protective order, per the instructions in the Court's June 11, 2013 Order and a confirmation telephone conversation with Court

Only the nonparties opposed production. Neither the Commission nor Parnon had conducted a relevance analysis of the millions of nonparty documents being shared. The Commission had (and still has) no motive to limit the production of nonparty materials to those relevant, and has admitted that it lacks the resources to conduct a specific analysis. *See* Hearing Tr., 51:10-25. Likewise, Parnon had (and still has) no incentive to perform a relevance analysis on documents containing *other entities'* confidential information.

In its October 25, 2013 order,[3] the district court denied, in relevant part, Plains's objections and its motion for a protective order. The court directed Parnon to comply with the class-action plaintiffs' document requests, and stated that Parnon may review the nonparty documents it received from the Commission. Without the benefit of any meaningful relevance analysis, the district court ordered *all* nonparty documents be produced because *some* of those documents belong in general categories of information potentially relevant to the dispute. *See* Memo. and Order, No. 11-civ-3543, Doc. 139 (Oct. 25, 2013). Plains sought a stay of that order, *see* Class Action, Doc. 167, which the district court denied on November 8, 2013, *see id.*, Doc. 178; Commission Action, Doc. 149.

---

chambers on June 20, 2013." Objections of Non-Party Plaintiffs, Commission Action, Doc. 89, at 4 n.1; Class Action, Doc. 118, at 4 n.1.

[3] The Order is attached as Exhibit 5 to this motion.

# ARGUMENT

## I. This Court Should Stay the District Court's Order Compelling Production of Plains's Proprietary Business Information Pending an Expedited Appeal.

Plains requests a stay to preserve the status quo—that is, the non-production of its proprietary business records—while it appeals the district court's order directing one party (with no interest in protecting Plains's confidential information) to hand over all of Plains's documents to another party (who also has no interest in protecting that information).  In deciding whether to grant a stay pending appeal, this Court considers four factors:  "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated 'a substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected."  *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (quoting *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)).  To warrant granting a stay, the movant need not satisfy every factor, *see, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007), and "more of one [factor] excuses less of the other," *Mohammed v. Reno*, 309 F.3d 95, 101-02 (2d Cir. 2002); *accord Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).  The balance of factors counsels in favor of granting Plains's request.

## A.    Without a Stay, Plains Will Suffer Irreparable Injury.

It is irrelevant to Plains whether the Commission, class-action plaintiffs, or Parnon ultimately prevail in the two lawsuits currently before the district court. Plains's entire interest in this case will be resolved in the expedited appeal it seeks in this motion.[4]  But in order for that appeal to have a purpose, Plains needs a stay to prevent Parnon from disclosing its confidential information to the class-action plaintiffs, as directed in the district court order.

Nonparties like Plains are the only entities with an interest in protecting their own confidential information.  In an ordinary lawsuit, nonparties can protect their highly proprietary information from discovery by holding the party seeking discovery to its relevance burden through, for example, filing objections and participating in the creation of a protective order from the outset.  But, here, the plaintiffs circumvented traditional nonparty discovery rules by seeking Plains's documents indirectly from the Commission rather than Plains itself.  Thus, the class-action plaintiffs continue to seek disclosure of the millions of documents

---

[4]  Because the discovery order finally resolves an issue that is separate from the merits of the underlying action and that will effectively be unreviewable on appeal from a final judgment, the district court's order is immediately appealable under the collateral-order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).  *See, e.g.*, *EM Ltd. v. Argentina*, 695 F.3d 201, 207 (2d Cir. 2012); *see also In re Air Crash at Belle Harbor*, 490 F.3d 99, 106 (2d Cir. 2007) (recognizing that the holder of an asserted privilege may immediately appeal the enforcement of a subpoena when the subpoena is directed at another person who does not object to providing the testimony or documents at issue).

nonparties provided the Commission to aid in their investigative efforts. *See* No. 11-3600, Doc. 173, at 1. The Commission does not oppose further disclosure of Plains's confidential business documents. *See* Case No. 11-civ-3543, Doc. 147. And Parnon is ready to turn over those documents at any moment—indeed, it *wants* to do so. *See* Case No. 1:11-civ-3600, Doc. 175, at *1 (Ltr. Br. of Defendant Parnon Energy Inc. et al.) ("Defendants *do* want to produce the third party documents to Plaintiffs. Defendants were preparing to do just that immediately after the proposed modified protective orders were submitted when we received the appealing parties' notice of appeal and request for stay . . . .").

Without a stay, Plains runs the risk that its proprietary records will be produced to the class-action plaintiffs. The disclosure of Plains's confidential business information (including its price structures, corporate strategy, and customer contracts) would in and of itself cause irreparable harm to Plains. *Nat'l Elevator Cab & Door Corp. v. H&B Inc.*, 282 Fed. App'x 885, 887-88 (2d Cir. 2008) (holding in preliminary-injunction context that disclosure of confidential business information would constitute irreparable harm); *Int'l Bus. Machs. Corp. v. Johnson*, 629 F. Supp. 2d 321, 335 (S.D.N.Y. 2009) ("The real or inevitable disclosure of trade secret information is sufficient to establish a real risk of irreparable harm."); *see also, e.g.*, *Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 569 (8th Cir. 1982) (noting, as part of "irreparable harm" analysis, that "[t]he possible

9

disclosure or use of confidential information such as customer information, is relevant in determining the potential harm to the former employer").

Disclosure of the information Plains's appeal seeks to protect could negatively impact Plains's right to appeal. *See, e.g.*, *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Litig.*, 821 F.2d 1422, 1425 (9th Cir. 1987) (dismissing appeal under the collateral-order doctrine because a party "already produced the requested documents, and we cannot restore the privilege").  Courts have long recognized that the "loss of appellate rights is a quintessential form of prejudice," and that "where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 348 (S.D.N.Y. 2007) (internal quotations omitted); *see also John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) ("The fact that disclosure would moot that part of the Court of Appeals' decision requiring disclosure . . . would . . . create an irreparable injury").

### B.  Plains Has Strong Grounds for an Appeal

To satisfy the second prong, a party need only show "a substantial possibility" of success in its appeal. *Hirschfeld*, 984 F.2d at 39.  Plains's claim of error more than meets that test.

The court committed legal error by effectively relieving class-action plaintiffs from the burden of showing the relevance of the information they seek to

discover.[5]  To date, *none of the parties* has performed a particularized analysis of the relevance of the millions of nonparty documents at issue.  Indeed, in responding to the nonparty objections, the Commission would only commit to the position "that the information may generally be relevant" and reserved its "right to object to specific documents in future proceedings on the grounds of relevance." Resp. of Commission to Third Party Objections, Case No. 11-civ-3543, Doc. 104, at 6 n.2.  Instead, the court only made a sweeping generalization that the nonparty documents class-action plaintiffs seek are relevant to their claims.  *See* Order at *6-7.  Although the court acknowledges some of the nonparties' objections, *see id.* at *5-6, it never addresses the fact that many of the specific documents identified by the objecting nonparties concern dates and acts indisputably irrelevant to whether Parnon manipulated the oil market.  For example, the Plains documents at issue include reports showing projections of profits, revenues and losses, summaries of Plains's daily risk controls, certain of Plains's risk management committee meeting agendas, minutes and related meeting notes, and numerous emails and other documents showing contemplated or actual transactions between Plains and third parties over nearly a two-year time period.  This information is irrelevant to the

---

[5] Although a district court's decision regarding discovery protective orders is reviewed under a deferential abuse-of-discretion standard, this Court has "repeatedly observed" that a district court "necessarily abuses its discretion if its conclusions are based on an erroneous determination of law."  *U.S. Sec. & Exch. Comm'n v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001).

class-action plaintiffs' claims that Parnon engaged in manipulative market activity.

By failing to conduct a meaningful review of the documents at issue, the court relieves the class-action plaintiffs of their burden to show the relevance of the highly confidential information they seek.  This leaves out an integral part of Rule 26(c)'s "three-step analysis" by which, once the party resisting discovery identifies protected proprietary information, the disclosure of which would harm its interests, "the burden shifts to the party seeking discovery to demonstrate that the information sought is relevant and necessary."  *Madanes v. Madanes*, 186 F.R.D. 279, 288 (S.D.N.Y. 1999) (citing *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991)).  Only if the party seeking discovery meets that particularized burden does the court then balance each side's relative interests.  *Id.*; *see also, e.g.*, *Duplan Corp. v. Deering Milliken*, 397 F. Supp. 1146, 1185 (D.S.C. 1975) ("Once the privilege is asserted by the owner, the party seeking discovery must make a clear showing that the documents are relevant to the issues involved in this litigation.  In doubtful situations, production will not be ordered.").

It is, after all, the party seeking discovery who must "demonstrate that its need for the information, and the harm that it would suffer from the denial of such information, outweigh the injury that disclosure would cause either the other party or the interests cited by it."  *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985); *accord Duplan*, 397 F. Supp. at 1185 ("[S]tandard is higher than

the hurdle for discovery of unprivileged but relevant documents . . . ."); *see also Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D. 528, 530 (E.D. Wis. 1990) ("If it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause.") (citation omitted); *cf. In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011) (noting heightened standard for discovery of mediation communications in light of the "important feature" of "[c]onfidentiality").

Courts cannot abrogate the duty of the party seeking (highly confidential) information from the burden of showing relevance by allowing it to treat *over five million* nonparty documents and thousands of hours of audio recordings as if they were a monolithic block. *See, e.g.*, *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (holding that a party seeking to discover a broad range of documents must be held to the higher standard of showing "more particularized need and relevance"); *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996) (examining with particularity the discovery requests and determining that the party does not "have needs sufficient to justify many of the sweeping demands").

This is especially important when, as here, those "sweeping demands" are made with respect to nonparties. After all, "[a]lthough discovery is by definition

13

invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation," but nonparties—rightly—"have a different set of expectations." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). As a result, numerous courts have recognized that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."[6] *Id.* (collecting cases); *see also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49, 52 (S.D.N.Y. 1996) (analyzing with particularity nonparty document request and determining request for documents to be "overbroad"); *BSN Med., Inc. v. Parker Med. Assocs., LLC*, No. 10 Misc. 15, 2011 WL 197217, at *2 (S.D.N.Y. Jan. 19, 2011) ("[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party."). Like the nonparty resisting discovery in *Cusumano*, Plains is a "stranger[]" to this litigation and "ha[s] no dog in th[is] fight." 162 F.3d at 717.

The need for the trial court to put the party seeking discovery to its proper burden of showing relevance is particularly strong where, as here, that party is attempting an end-run around traditional discovery rules through a blanket request

---

[6] "The term 'burden' in Rule 26(b)(2) may be construed to limit disclosure where the burden is not measured in the time or expense required to respond to requested discovery, but lies instead in the adverse consequences of the disclosure of sensitive, albeit unprivileged, material." *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) (internal quotation marks omitted).

of millions of nonparty documents.  Just because the information was produced through a government agency does not mean that the class-action plaintiffs are relieved of the requirement to identify with particularity the relevance of the documents sought.  As one court put it, those seeking discovery in such a situation "must do their own work" by "mak[ing] proper requests describing the information in which they are interested."  *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (denying plaintiffs' motion to compel where plaintiffs requested "all documents received from or provided to" a particular government agency); *see also In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417, 2007 WL 2127577, at *5-6 (N.D. Cal. July 24, 2007) (granting motion to stay discovery where plaintiffs had requested all documents previously produced to a particular government agency, noting that the defendants held a legitimate interest in maintaining the confidentiality of their records, and should have the opportunity to identity and assert objections against plaintiffs that were not against the government).

The court's order necessarily turns on its relevance analysis, to Plains's prejudice.  After all, "[i]f the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed."  *In re Remington*, 952 F.2d at 1032.

15

The court also failed to recognize the significant harms further disclosure of nonparty proprietary information would cause.  Although the court paid lip service to the fact that "even 'stale' business information can be valuable in the hands of competitors," Order at *6, it nonetheless discounted the potential for any harm, and in doing so missed the point of what it means to protect confidential information.[7] Plains's documents, even though several years old, provide a road map for Plains's business strategies.  They demonstrate how Plains makes pricing decisions, its profit margins, and its hedging and risk-management strategies.  There is no reason to doubt the harm Plains would suffer if this confidential business information were disseminated to competitor class-action plaintiffs.  The harm from such a disclosure is very real; the value of the information to Plains is extraordinary, as

---

[7] Plains's productions to the Commission include the company's risk management reports, profit-and-loss statements, audit materials, third-party contracts, and financial summaries—which courts have recognized can constitute protected trade secrets.  It is well established that trade-secret protection extends to a "broad spectrum of internal corporate documents."  *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 144 (S.D.N.Y. 1997); *see also American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740-41 (Fed. Cir. 1987) (trade-secret protection includes pricing information and sales data); *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 599-600 (E.D.N.Y. 2000) (equating "proprietary information" with "trade secrets").

Plains's information qualifies as protectable trade secrets under the laws of every jurisdiction potentially applicable to this dispute.  *See Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (New York law); *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 610 (5th Cir. 2011) (Texas law); *Merck & Co., Inc. v. SmithKline Beecham Pharms. Co.*, No. C.A. 15443-NC, 1999 WL 669354, at *15 (Del. Ch. Aug. 5, 1999) (Delaware law); *Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 8

would be its value to Plains's competitors. Widespread knowledge of how Plains operates its business could "alter [its] competitive position" in its market. *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1034-35 (S.D.N.Y. 1993). Courts have long recognized the harm in releasing confidential information to competitors, and have incorporated that into the discovery analysis. *See, e.g.*, *American Standard*, 828 F.3d at 741 (surveying cases); *Advanced Semiconductor Prods., Inc. v. Tau Labs., Inc.*, 229 U.S.P.Q. 222, 224 (N.D. Cal. 1986) (applying more-stringent relevance test in light of the fact that discovery would reveal confidential information to competitor); *Everco Indus. v. O.E.M. Prods. Co.*, 362 F. Supp. 204, 206 (N.D. Ill. 1973) (treating parties' status as competitors as a factor in denying discovery of confidential information); *see also United States v. United Fruit Co.*, 410 F.2d 553, 557 & n.11 (5th Cir. 1969) (limiting disclosure of financial and marketing data to competitors).

Finally, the district court's statement that "Parnon itself competes with many of the nonparty objectors and already possesses the documents at issue," Order at *5, appears to suggest that Parnon's possession of this information undercuts Plains's right to try to protect it. Not so. The owner must only make "reasonable efforts to safeguard the confidentiality" of its information. *E.g.*, *Catalyst & Chem. Servs.*, 350 F. Supp. 2d at 8; *accord Merck & Co., Inc. v. SmithKline Beecham*

---

(D.D.C. 2004) (DC law).

*Pharms. Co.*, No. C.A. 15443-NC, 1999 WL 669354, at *15 (Del. Ch. 1999). That is to say, "[a]n owner is not required to maintain absolute secrecy to retain trade secret protection." *Catalyst & Chem. Servs.,* 350 F. Supp. 2d at 10. Plains has taken great steps to protect its information, including, for example, designating it "Confidential Treatment Requested" and exempt from FOIA during the initial production to the Commission; designating it "Highly Confidential" under the protective order in the Commission Action; and, of course, resisting its disclosure in this litigation. *See* Dreyfuss Decl., ¶ 8.

## C.    A Stay Would Not Substantially Harm the Class-Action Plaintiffs.

A short stay while the Court decides this important discovery issue would "do[] nothing more than maintain the status quo." *U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts., Inc.*, 673 F.3d 158, 168 (2d Cir. 2012). The balance of hardships weighs heavily in Plains's favor. This is best evidenced by the very-different nature of the harm to Plains and the parties if the Court rules for the other side on this motion. On the one hand, if Plains is granted a stay but is ultimately unsuccessful in its appeal, the parties would have endured only "a minor delay"—the kind "occasioned by almost all interlocutory appeals." *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003). On the other, if the Court denies Plains's stay, Parnon will begin producing the documents at issue, in accordance with the court's order, thus running the risk that Plains's appeal could be mooted

before it is heard on the merits, *see, e.g.*, *In re Nat'l Mortg. Equity Corp.*, 821 F.2d at 1425. *See generally John Doe Agency*, 488 U.S. at 1309 ("The fact that disclosure would moot [an issue concerning the release of information] would . . . create an irreparable injury. . . . Conversely, the Corporation's interest in receiving this information immediately, while significant if the Corporation's interpretation of the [relevant law] is correct, poses no threat of irreparable harm.").

### D.    A Stay Would Be in the Public Interest.

Preserving the effectiveness of this appeal by granting a stay would be in keeping with the public interest in at least two respects. First, "there is a general[] public interest in 'upholding the inviolability of trade secrets.'" *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010) (citation omitted). Second, there is "a strong public interest in encouraging disclosure and cooperation with law enforcement agencies; violating a cooperating party's confidentiality expectations jeopardizes this public interest." *Police and Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06-civ-5797, 2010 WL 935317, at *2 (S.D.N.Y. Mar. 12, 2010). To do so would send the message that companies can only ensure that their confidential, proprietary materials will not be shared with third party civil litigants by refusing to cooperate with a government investigation.

## II.    The Court Should Schedule This Appeal for Expedited Briefing.

In an effort to resolve the status of its claims as soon as possible, and to

19

minimize any harm to the parties by a delay in discovery, Plains requests that the court expedite its appeal. An expedited schedule accords with this Court's practice for appeals of important discovery issues. *See, e.g.*, *Time Warner Cable of New York City v. M.D. Elecs., Inc.*, 101 F.3d 278, 281 (2d Cir. 1996) (expedited appeal and stay of discovery order); *Appl. of Gianoli Aldunate*, 3 F.3d 54, 55 (2d Cir. 1993) (expedited appeal of discovery order); *Appl. of Am. Tobacco Co.*, 866 F.2d 552, 553-54 (2d Cir. 1989) (expedited appeal and stay of discovery order).

## CONCLUSION

For the foregoing reasons, the Court should enter an order expediting the appeal and staying the district court's October 25 Order pending appeal. Alternatively, this Court should enter a temporary administrative stay pending full consideration of this motion, or such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ *Hilary L. Preston*
Hilary L. Preston
Armita S. Cohen
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel: (212) 237-0000
Fax: (212) 237-0100
hpreston@velaw.com
acohen@velaw.com

*Counsel for Appellant*
*Plains All American Pipeline, LP*

November 13, 2013

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date hereof, the above emergency motion for stay, with exhibits, was filed using the Court's CM/ECF system, which served a copy of the document on all counsel of record.

/s/ *Hilary L. Preston* _____

*Counsel for Appellant*
*Plains All American Pipeline, LP*