# 13-4206(L)

## 13-4323(CON)

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

U.S. COMMODITY FUTURES TRADING COMMISSION,

*Plaintiff-Appellee*,

v.

PARNON ENERGY INC., ARCADIA PETROLEUM LTD., ARCADIA
ENERGY (SUISSE) SA, NICHOLAS J. WILDGOOSE, JAMES T. DYER,

*Defendants-Appellees*,

v.

CASTLETON COMMODITIES INTERNATIONAL LLC, VITOL INC., VITOL
CAPITAL MANAGEMENT LTD., PLAINS ALL AMERICAN PIPELINE, LP,
MORGAN STANLEY CAPITAL GROUP, INC., SHELL OIL COMPANY,

*Appellants*.

On Appeal from an Order of the U.S. District Court for the Southern District of
New York, No. 11-Civ.-3543, the Hon. William H. Pauley III, District Court Judge

### BRIEF OF APPELLANT PLAINS ALL AMERICAN PIPELINE, L.P.

Eric A. White
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW,
Suite 500 West
Washington, DC 20037-1701
(202) 639-6500

Hilary L. Preston
  *Counsel of Record*
Armita S. Cohen
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
(212) 237-0000

*Counsel for Appellant Plains All American Pipeline, L.P.*

December 23, 2013

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, Plains All American Pipeline, L.P. states that it has no parent corporation and that no publicly held corporation owns 10% or more of an interest in the common units of Plains All American Pipeline, L.P.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................iv

PRELIMINARY STATEMENT ...............................................................1

JURISDICTIONAL STATEMENT ...........................................................3

STATEMENT OF RELATED CASES ....................................................4

STATEMENT OF THE ISSUE .................................................................5

STATEMENT OF THE FACTS & CASE ..............................................5

    A.    The CFTC Collects Millions of Nonparty Proprietary Records as Part of Its National Crude Oil Investigation ...................................5

    B.    The CFTC Produces Nonparty Records in Its Action Against Parnon Energy Inc., et al. .....................................................6

    C.    Parnon Offers to Produce Nonparty Records to Class-Action Plaintiffs in a Separate Civil Action Against It....................................8

    D.    The District Court Orders the Production of Nonparty Records ........10

    E.    Plains Appeals to This Court to Prevent the Disclosure of Its Records ..............................................................11

SUMMARY OF THE ARGUMENT .....................................................11

STANDARD OF REVIEW ...................................................................13

ARGUMENT ........................................................................................13

The District Court Improperly Ordered Discovery of Plains's Confidential
Business Records to Its Competitors ....................................................13

    A.    The District Court Did Not Make a Particularized
Determination of the Relevance of Plains's Documents
to the Class-Action Plaintiffs' Claims....................................14

        1.   The District Court Did Not Hold the Parties to Their
Burden of Showing Relevance.........................................14

            i.   A Proper Assessment of Relevance Is Particularly
Important for Nonparty Discovery ..........................19

           ii.  The Bulk of the Documents at Issue Are Not Relevant
to the Class Action ....................................20

        2.   A Protective Order Is Not a Substitute for Conducting
the Requisite Relevance Analysis ...................................24

        3.   The Improper Disclosure Harmed Plains By Revealing Its
Highly Sensitive Business Records ...............................26

    B.    The Court Should Have Required the Plaintiffs to Seek Any
of Plains's Documents Relevant to Its Claims through the
Traditional Route of Nonparty Discovery...........................29

    C.    This Court Can Fashion Prospective Relief ........................32

CONCLUSION ...................................................................36

STATEMENT CONCERNING ORAL ARGUMENT ..........................38

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                              **Page(s)**

*Abernathy-Thomas Eng'g Co. v. Pall Corp.*,
    103 F. Supp. 2d 582 (E.D.N.Y. 2000) ................................................................. 26

*Advanced Semiconductor Prods., Inc. v. Tau Labs., Inc.*,
    229 U.S.P.Q. 222 (N.D. Cal. 1986) ..................................................................... 28

*Am. Standard Inc. v. Pfizer Inc.*,
    828 F.2d 734 (Fed. Cir. 1987) ............................................................................. 26

*Anderson v. Cryovac, Inc.*,
    805 F.2d 1 (1st Cir. 1986) .................................................................................... 35

*Apex Oil Co. v. DiMauro*,
    110 F.R.D. 490 (S.D.N.Y. 1985) ........................................................................ 17

*Arista Records LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ................................................................................ 29

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
    171 F.R.D. 135 (S.D.N.Y. 1997) ........................................................................ 26

*Bimbo Bakeries USA, Inc. v. Botticella*,
    613 F.3d 102 (3d Cir. 2010) ................................................................................ 31

*Brigham Young Univ. v. Pfizer, Inc.*,
    No. 2:06-cv-890, 2011 WL 2516935 (D. Utah June 23, 2011) .......................... 25

*Brown v. Am. Honda Motor Co.*,
    939 F.2d 946 (11th Cir. 1991) ............................................................................ 19

*BSN Med., Inc. v. Parker Med. Assocs., LLC*,
    No. 10 Misc. 15, 2011 WL 197217 (S.D.N.Y. Jan. 19, 2011) ........................... 20

*Catalyst & Chem. Servs., Inc. v. Global Ground Support*,
    350 F. Supp. 2d 1 (D.D.C. 2004) ................................................................. 27, 29

iv

## Cases (cont.)                                                     Page(s)

*Centurion Indus., Inc. v. Warren Steurer & Assocs.*,
   665 F.2d 323 (10th Cir. 1981) ........................................................24

*Chen-Oster v. Goldman, Sachs & Co.*,
   No. 10-Civ.-6950, 2013 WL 5629831 (S.D.N.Y. Oct. 15, 2013) ............... 18-19

*Church of Scientology of Cal. v. United States*,
   506 U.S. 9 (1992)........................................................................34

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949).....................................................................3

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) ......................................................20

*Cusumano v. Microsoft Corp.*,
   162 F.3d 708 (1st Cir. 1998)........................................................19

*Duplan Corp. v. Deering Milliken*,
   397 F. Supp. 1146 (D.S.C. 1975) ..............................................16, 17

*Eli Lilly & Co. v. Gottstein*,
   617 F.3d 186 (2d Cir. 2010) ........................................................33

*EM Ltd. v. Argentina*,
   695 F.3d 201 (2d Cir. 2012) .........................................................4

*Everco Indus. v. O.E.M. Prods. Co.*,
   362 F. Supp. 204 (N.D. Ill. 1973)..................................................28

*FEC v. Wisc. Right to Life, Inc.*,
   551 U.S. 449 (2007)....................................................................35

*Gannett Co. v. DePasquale*,
   443 U.S. 368 (1979)....................................................................35

*Gelb v. Am. Tel. & Tel. Co.*,
   813 F. Supp. 1022 (S.D.N.Y. 1993) ...............................................28

**Cases (cont.)** **Page(s)**

*Herbert v. Lando*,
    441 U.S. 153 (1979)......................................................................26

*In re Air Crash at Belle Harbor*,
    490 F.3d 99 (2d Cir. 2007) ...........................................................3

*In re Al Fayed*,
    36 F. Supp. 2d 694 (D. Md. 1999).................................................32

*In re Biovail Corp. Sec. Litig.*,
    247 F.R.D. 72 (S.D.N.Y. 2007) ....................................................14

*In re Grand Jury Investigation*,
    445 F.3d 266 (3d Cir. 2006) .........................................................34

*In re Grand Jury Investigation No. 78-184*,
    642 F.2d 1184 (9th Cir. 1981) ......................................................25

*In re Graphics Processing Units Antitrust Litig.*,
    No. C 06-07417, 2007 WL 2127577 (N.D. Cal. July 24, 2007) .......30

*In re Lafayette Radio Elec. Corp.*,
    761 F.2d 84 (2d Cir.1985) ...........................................................34

*In re Remington Arms Co.*,
    952 F.2d 1029 (8th Cir. 1991) .................................................16, 24

*In re Reporters Comm. for Freedom of the Press*,
    773 F.3d 1325 (D.C. Cir. 1985)....................................................35

*In re Sealed Case*,
    381 F.3d 1205 (D.C. Cir. 2004).......................................................4

*In re Teligent, Inc.*,
    640 F.3d 53 (2d Cir. 2011) ..........................................................17

*In re Zyprexa Injunction*,
    474 F. Supp. 2d 385 (E.D.N.Y. 2007) ...........................................34

**Cases (cont.)** Page(s)

*Johnson v. Nyack Hosp.*,
  169 F.R.D. 550 (S.D.N.Y. 1996) ..................................................18, 19

*Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*,
  129 F.R.D. 528 (E.D. Wis. 1990) ......................................................17

*Madanes v. Madanes*,
  186 F.R.D. 279 (S.D.N.Y. 1999) ................................................16, 24

*Marshall v. Westinghouse Elec. Corp.*,
  576 F.2d 588 (5th Cir. 1978) .................................................. 17-18, 19

*Martin-Trigona v. Schiff*,
  702 F.2d 380 (2d Cir. 1983) ................................................................9

*McMillan v. Togus Reg'l Office, Dep't of Veterans Affairs*,
  294 F. Supp. 2d 305 (E.D.N.Y. 2003) ..............................................25

*Medtech Prods. Inc. v. Ranir, LLC*,
  596 F. Supp. 2d 778 (S.D.N.Y. 2008) ...............................................27

*Merck & Co., Inc. v. SmithKline Beecham Pharms. Co.*,
  No. C.A. 15443-NC, 1999 WL 669354 (Del. Ch. Aug. 5, 1999)................27, 29

*Midwest Gas Servs., Inc. v. Ind. Gas Co.*,
  No. IP99-0690-C-Y/G, 2000 WL 760700 (S.D. Ind. Mar. 7, 2000) .................30

*Mitchell v. Fishbein*,
  227 F.R.D. 239 (S.D.N.Y. 2005) ................................................18, 20

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) ..............................................................35

*Norfolk Cnty. Ret. Sys. v. Ustian*,
  No. 07-C-7014, 2010 WL 1489996 (N.D. Ill. Apr. 13, 2010) .........................23

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
  981 F.2d 429 (9th Cir. 1992) ............................................................18

**Cases (cont.)**                                                              **Page(s)**

*Police and Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
  No. 06-civ-5797, 2010 WL 935317 (S.D.N.Y. Mar. 12, 2010) .........................31

*Rossini v. Argentina*,
  453 F. App'x 22 (2d Cir. 2011) .........................................................................20

*S.R. Mercantile Corp. v. Maloney*,
   909 F.2d 79 (2d Cir. 1990) ...............................................................................33

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
  878 F.2d 875 (5th Cir. 1989) ...........................................................................36

*Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*,
  637 F.3d 604 (5th Cir. 2011) ...........................................................................27

*U.S. Sec. & Exch. Comm'n v. Finazzo*,
  543 F. Supp. 2d 224 (S.D.N.Y. 2008) ..............................................................33

*U.S. Sec. & Exch. Comm'n v. TheStreet.com*,
  273 F.3d 222 (2d Cir. 2001) .............................................................................13

*United States v. AT&T*,
  642 F.2d 1285 (D.C. Cir. 1980) ..........................................................................4

*United States v. Int'l Bus. Machs. Corp.*,
  66 F.R.D. 215 (S.D.N.Y. 1974) ........................................................................14

*United States v. Sells Eng'g, Inc.*,
  463 U.S. 418 (1983) ..........................................................................................33

*United States v. Treacy*,
  639 F.3d 32 (2d Cir. 2011) ...............................................................................29

*United States v. United Fruit Co.*,
  410 F.2d 553 (5th Cir. 1969) ...........................................................................28

*Westmoreland v. Columbia Broad. Sys., Inc.*,
  752 F.2d 16 (2d Cir. 1984) .................................................................................9

**Cases (cont.)** **Page(s)**

*Zelaya v. UNICCO Serv. Co.*,
    682 F. Supp. 2d 28 (D.D.C. 2010).......................................................19

**Statutes and Regulations**

17 C.F.R. § 11.2 ............................................................................... 35-36

17 C.F.R. § 11.4 ............................................................................... 35-36

28 U.S.C. § 1291 ....................................................................................3

**Other Authorities**

Fed. R. Civ. P. 26(b)(1).........................................................10, 14, 16

Fed. R. Civ. P. 26(c)..................................................................16, 24

## **PRELIMINARY STATEMENT**

From 2008 through 2013, Plains All-American Pipeline, L.P. ("Plains") received from the U.S. Commodity Futures Trading Commission ("the CFTC" or "the Commission") a series of investigative demands and subpoenas seeking proprietary information to aid in the agency's broad investigation into manipulation in the market for crude oil. Plains reluctantly complied with the Commission's demands, turning over a vast number of its proprietary business records with assurances from the agency that those materials would be kept confidential, handled with care, and not be released to third parties without first providing notice to Plains. But, instead, in the face of requests from other parties in subsequent court proceedings for quick access to documents belonging to Plains and other nonparties, the Commission has been all too willing to produce those documents, without so much as even reviewing them for relevance.

Plains has persistently sought to protect its highly confidential and competitively sensitive business information from disclosure to a putative class of plaintiffs—a class almost certain to include Plains's competitors. Ordinarily, as a nonparty to the litigation, Plains would have received a nonparty subpoena, giving it the ability to make decisions about which of its competitively sensitive materials are relevant to the litigation. Had that been the case, Plains would have been positioned to move to quash overbroad discovery requests and negotiate a

1

protective order that adequately protects information produced in litigation. Despite Plains's best efforts to protect its documents, the Commission produced them to defendants Parnon Energy Inc. et al. (collectively "Parnon"), wholesale, and without any regard to their relevance—years after Plains provided the Commission with its proprietary information in response to the agency's earlier, broader investigation.

The Commission has taken the position that it is the "producing party" of all the documents obtained in the course of its investigation, and that it may make decisions about "the appropriate use of its documents as it deems appropriate." JA159.  The agency deemed it appropriate simply to hand over millions of pages of Plains's proprietary business records to Parnon—without giving Plains an opportunity to object—including documents it freely admits "maybe were not relevant."  No. 11-cv-3600, Dkt. 147, at 51:18 (Testimony of Counsel for the Commission at July 1, 2013 Hearing) (available at JA235 in No. 13-4263 Joint Appendix); *see also id.* at 11:7-8 (No. 13-4263 JA195) ("[T]here may be some things in there that slipped through the cracks."); *id.* at 14:17-18 (No. 13-4263 JA198) ("I can't stand here and tell you that we have looked at all five million documents."); *id.* at 51:23-25 (No. 13-4263 JA235) ("The reason we didn't review [all of the audio files] is it's hundreds or tens of thousands of hours of audio involved in that.").

Now, with the benefit of a district court order that relieves the party seeking discovery from making *any* particular showing of relevance, Parnon has disclosed, in full, that same set of highly confidential records to a group of class-action plaintiffs in a case far more limited in scope than the original agency investigation, who are presumably beginning the arduous task of reviewing them while this appeal is ongoing.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal of the district court's discovery order under 28 U.S.C. § 1291. The issue Plains raises does not turn on whether the Commission, class-action plaintiffs, or Parnon ultimately prevail in the two lawsuits currently ongoing in the district court: Plains's entire interest in this case stems from the district court's discovery order. Because that order finally resolves an issue that is separate from the merits of the underlying action and that will effectively be unreviewable on appeal from a final judgment, the district court's order is immediately appealable under the collateral-order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *Cf., e.g., In re Air Crash at Belle Harbor*, 490 F.3d 99, 106 (2d Cir. 2007) ("[T]he holder of an asserted privilege may immediately appeal the enforcement of a subpoena when the subpoena is directed at another person who does not object to providing the testimony or documents at issue.").

3

Here, the district court's "[d]iscovery [o]rder represented its final determination" of whether the nonparty documents should be disclosed to the class-action plaintiffs. *EM Ltd. v. Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). The "scope of discovery" at issue "is separate from the merits" of whether Parnon engaged in market manipulation. *Id.* And Plains "will be unable to obtain effective review . . . through a later appeal of a final judgment." *Id.* Moreover, because the class-action plaintiffs sought the nonparty documents at issue from Parnon (who itself received them from the Commission), and not the nonparties themselves, "an appeal should be permitted because the nonparty appellant[s] 'w[ere] not the object of the document demand and could therefore not possibly refuse disclosure and undergo a contempt citation as a means to appeal.'" *In re Sealed Case*, 381 F.3d 1205, 1210 (D.C. Cir. 2004) (quoting *United States v. AT&T*, 642 F.2d 1285, 1296 (D.C. Cir. 1980)).

Plains filed a notice of appeal of the district court's discovery order on October 30, 2013. *See* JA172-JA175.

## STATEMENT OF RELATED CASES

The issue in this appeal is substantially related to the issue in No. 13-4263 (along with consolidated-member No. 13-4447), also before this Court. All of these appeals arise from the same district court order filed in two separate cases below: Case No. 13-4206, along with consolidated-member No. 13-4323, arise

4

from Case No. 11-cv-3543 (S.D.N.Y.) (the "Commission Action"); and Case Nos. 13-4263 and 13-4447 arise from Case No. 11-cv-3600 (S.D.N.Y.) ("the Class Action"). This Court has ordered the cases to be heard in tandem. *See* No. 13-4206 (2d Cir.), Dkt. 126.

## STATEMENT OF THE ISSUE

Whether the district court erred when it ordered the defendants to produce millions of highly sensitive, confidential nonparty documents obtained from the CFTC without first requiring a particularized determination of relevance, and where no party even reviewed the documents in question before producing them.

## STATEMENT OF THE FACTS & CASE

### A.   The CFTC Collects Millions of Nonparty Proprietary Records as Part of Its National Crude Oil Investigation

Beginning in 2008, the U.S. Commodity Futures Trading Commission commenced a national crude oil investigation into the manipulation of crude oil prices, and issued requests and subpoenas to over 60 companies who are nonparties to this action. *See* Plaintiffs' Resp. to Certain Objections to Plaintiffs' Request for Production of Documents, No. 11-cv-3600, Dkt. 133, at 4 (available at JA176 in No. 13-4263 Joint Appendix). Given the breadth of the government's investigation, the CFTC's requests, which encompassed 2007 and 2008, were also very broad, encompassing information related to confidential customer contracts and pricing, proprietary business records, committee reports and minutes, detailed

5

company reports and data, and emails and other internal communications discussing confidential and competitively sensitive commercial information. *See, e.g.*, JA99-JA116 (CFTC requests of Valero); JA125 (at ¶ 7) (CFTC requests of Plains).

The Commission used its investigative power to issue subpoenas and requests to Plains for documents and information. Even though Plains complied with the government's request, it was careful to act at all times with extreme reservation and concern for the protection of its confidential and proprietary records. JA124 (at ¶ 4). For instance, Plains provided its highly proprietary information with the understanding that it would not be disclosed to the public. *Id.* Plains also made a timely request of the Commission to treat its documents and other information confidentially, and filed timely notices with the Commission's Freedom of Information Act ("FOIA") compliance office indicating that the documents are exempt from disclosure in response to FOIA requests. *Id.*

**B.    The CFTC Produces Nonparty Records in Its Action Against Parnon Energy Inc., et al.**

Following its broad investigation, in May 2011, the Commission filed a civil action under the Commodity Exchange Act alleging that defendants Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose, and James T. Dyer (collectively "Parnon") engaged in manipulation of the market during a discrete number of days in 2008 for specific grade of crude oil at a single

6

trading location. JA42-JA44; *see U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc., et al.*, No. 11-civ-3543 (S.D.N.Y.) ("the Commission Action"). The Commission did not bring any claims against the roughly 59 other nonparties from which it had obtained documents as part of its larger investigation into market manipulation.

In August 2012, the CFTC informed Plains that it intended to produce a discrete subset of Plains's materials in response to requests for the production of documents served in the Commission Action. Plains reviewed those specified documents, made appropriate designations of highly confidential material under the protective order in place in that action, and informed the Commission of those designations. *See generally* JA124-JA125. Based on the terms of the protective order in the Commission Action, Plains understood that the disclosure of its highly confidential information would be limited to those documents. *See* JA70-JA71 (at ¶ D(1)). The protective order expressly states that, "absent consent," highly confidential information "shall only be disclosed or made available to the following persons," in relevant part: "attorneys of record for the" Commission and Parnon and related staff (JA70 at ¶ D(1)(a)); "one (1) employee of Defendants collectively, to whom it is necessary" that the material "be shown in connection with the preparation and trial of this action" (JA70 at ¶ D(1)(b)); and "experts retained by" the Commission or Parnon, JA71 at ¶ D(1)(c). Moreover, the

Commission emphasized these three limitations and provided further reassurances that they would be strictly abided.  As a result, Plains reluctantly agreed to what it believed would be limited disclosure in connection with the Commission's investigation.  *See* JA124 (at ¶ 5).

The Commission eventually produced several million nonparty files (including over one million pages of Plains's documents and other information), the bulk of which were produced without *any* review of the documents, much less a relevancy determination, and without prior notice or opportunity to object afforded to the relevant nonparty.  *See, e.g.*, No. 11-cv-3600, Dkt. 147, at 24:11-12 (Testimony of Counsel for the Commission) (available at JA208 in No. 13-4263 Joint Appendix) (stating that relevant documents were housed by the Commission in 46 different databases and consisted of nearly six million documents); *id.* at 51:22-25 (stating that "hundreds or tens of thousands of [nonparty] audio" recordings were produced to Defendants without review) (available at No. 13-4263 JA235).

## C.    Parnon Offers to Produce Nonparty Records to Class-Action Plaintiffs in a Separate Civil Action Against It

Following on the heels of the Commission Action, a putative class of plaintiffs filed a suit against Parnon asserting similar claims.  *See In re Crude Oil Commodity Futures Litig.*, No. 11-civ-3600 (S.D.N.Y.) ("the Class Action").  In that action, putative class plaintiffs ("class-action plaintiffs") submitted 136

requests for documents and other information to Parnon, including a blanket request seeking production of, in pertinent part, all documents provided to Parnon by the CFTC in the Commission Action. Plains learned of those requests after the Commission had already produced its documents to Parnon. *See, e.g.*, JA159-JA160.

On June 11, 2013, the district court ordered any nonparties to file any objections they might have to the document requests with the court. *See* JA82-JA83. It was only at that time that Plains learned of the production. Plains (along with several other nonparties) filed timely objections, and Plains moved for a protective order.[1] *See* JA117-JA122.

Only the nonparties opposed production. Neither the Commission nor Parnon had conducted a relevance analysis of the millions of nonparty documents being shared. The Commission had no motive to limit the production of nonparty materials to those relevant, and has admitted that it lacked the resources to conduct a specific analysis. *See* No. 11-cv-3600, Dkt. 147, at 51:10-25 (Testimony of

---

[1] "Plains file[d] these objections and motion for protective order, rather than a motion to intervene and for protective order, per the instructions in the Court's June 11, 2013 Order and a confirmation telephone conversation with Court chambers on June 20, 2013." JA122 (at n.1); *cf. Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 19 (2d Cir. 1984) ("[T]he district court in effect permitted the [nonparty] to intervene in the [proceeding].") (internal quotations and brackets omitted); *Martin-Trigona v. Schiff*, 702 F.2d 380, 385-86 (2d Cir. 1983) ("[T]here are situations where a nonparty is allowed to appeal if the trial court's judgment has affected the nonparty's interest.").

Counsel for the Commission) (available at JA235 in No. 13-4263 Joint Appendix). Likewise, Parnon had no incentive to perform a relevance analysis on documents containing *other entities'* confidential information.

## D.    The District Court Orders the Production of Nonparty Records

In an October 25, 2013 order, the Honorable William H. Pauley III of the United States District Court for the Southern District of New York denied, in relevant part, Plains's objections and its motion for a protective order. *See* JA163-JA171.   The court directed Parnon to comply with the class-action plaintiffs' document requests, and stated that Parnon may review the nonparty documents it received from the Commission.  JA163-JA164, JA171.  The court did not require the parties to meet the burden of showing relevance required by Federal Rule of Civil Procedure 26(b)(1).  Instead, without the benefit of any meaningful relevance analysis (indeed, the Commission never even reviewed the documents, *see* pp. 2-8, *supra*), the district court permitted *all* nonparty documents to be produced because it determined that *some* of those documents fall into general categories of information potentially relevant to the dispute, JA168-JA169.  Plains sought a stay of that order, JA176-JA177, which the district court denied on November 8, 2013, *see* JA180-JA184.

**E.    Plains Appeals to This Court to Prevent the Disclosure of Its Records**

Immediately following the district court's order, Plains filed a notice of appeal.  JA172-JA175.  On November 13, 2013, Plains filed a motion with this Court seeking a stay pending appeal, expedited briefing, and a temporary stay pending the Court's consideration of Plains's motion.  Case No. 13-4206 (2d Cir.), Dkt. 22.  This Court, on November 20, entered an order temporarily staying the district court's order, pending review by a motions panel.  Case No. 13-4206 (2d Cir.), Dkt. 54.  On December 10, the motions panel denied Plains's motion for a stay pending appeal and expedited briefing, and lifted the temporary protection order.  Case No. 13-4206 (2d Cir.), Dkt. 125.

## SUMMARY OF THE ARGUMENT

In a typical case, the adversarial nature of proceedings ensures that the party who receives a discovery request has every incentive to resist ones that are overbroad and target irrelevant documents.  The documents' owners are also allowed to take steps to limit the dissemination of their confidential and competitively sensitive information.  But not here.  The discovery sought by the class-action plaintiffs consists of over a million pages of Plains's confidential, proprietary business records—including customer contracts and pricing, documents discussing company strategy, and detailed reports and data on its inventory and operations.

11

The party from whom the class-action plaintiffs sought to discover Plains's documents, Parnon Energy Inc. et al., had possession of those records through no fault of Plains.   Several years ago, the U.S. Commodity Futures Trading Commission compelled Plains to produce reams of its proprietary information to aid the government in its investigation of Parnon.   Plains turned the documents over to the Commission under a confidentiality proviso, and received assurances from the agency that it would alert Plains before any future document productions. But despite its assurances, the agency handed over Plains's proprietary business records to Parnon.   Now, with the district court's authorization, Parnon has disclosed those same highly confidential records to a class of plaintiffs that very likely includes Plains's business competitors.

The district court erred when it ordered Parnon to disclose the nonparties' proprietary information, despite the nonparties' unrefuted objection that not all of the documents at issue were relevant, subject to a protective order that the nonparties had no role in crafting.  Because neither the Commission, nor Parnon, nor the court ever reviewed the documents at issue, it was impossible for the district court to make any determination of relevance necessary to authorize the disclosure of confidential nonparty records.  Even if *some* of the millions of nonparty documents were relevant to the class-action plaintiffs' claims, the court should have limited its order to *those* documents and required the plaintiffs to

12

obtain them through traditional nonparty discovery requests rather than, indirectly, from the Commission.

Although, following this Court's denial of a stay, the documents at issue have been produced, this case is not moot. The Court can still grant Plains relief by, for example, enjoining the parties from further reviewing Plains's documents or from using them in court proceedings, or by ordering the return of all improperly disclosed records to Plains.

## STANDARD OF REVIEW

A district court's decision regarding discovery protective orders is reviewed for abuse of discretion. *U.S. Sec. & Exch. Comm'n v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001). This Court has "repeatedly observed" that a district court "necessarily abuses its discretion if its conclusions are based on an erroneous determination of law." *Id.*

## ARGUMENT

### The District Court Improperly Ordered Discovery of Plains's Confidential Business Records to Its Competitors

By ordering the defendants to produce millions of highly sensitive, confidential nonparty documents obtained from the CFTC without first requiring a particularized determination of relevance, and where no party even reviewed the documents in question before producing them, the court abused its discretion.

13

**A.    The District Court Did Not Make a Particularized Determination of the Relevance of Plains's Documents to the Class-Action Plaintiffs' Claims**

When the district court ordered the disclosure of Plains's confidential business information (including its price structures, corporate strategy, and customer contracts), it effectively relieved the party seeking discovery, the class-action plaintiffs, from the burden of showing the relevance of the information they sought to discover.  To date, *none of the parties* has performed a particularized analysis of the relevance of the millions of nonparty documents the class-action plaintiffs sought.  But to be discoverable, that information must be relevant to a party's claim or defense.  *See* Fed. R. Civ. P. 26(b)(1); *see also In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) (denying motion to compel compliance with subpoenas issued to nonparties because the "virtually limitless financial and other information [the plaintiff] seeks is unnecessary and irrelevant"). It is black-letter law that the burden of demonstrating that any information sought is relevant to the subject matter of the pending action is on the party seeking discovery.  *See, e.g.*, *United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974).  The court's order was in error.

**1.    The District Court Did Not Hold the Parties to Their Burden of Showing Relevance**

To date, the millions of highly sensitive Plains records have not been reviewed.  The Commission—*i.e.*, the party that produced those records as relevant

to Parnon, who then without conducting a full review produced them following the class-action plaintiffs' discovery request—freely admitted to the district court that some of the documents produced "maybe were not relevant," and that there "may be some things in there that slipped through the cracks." No. 11-cv-3600, Dkt. 147, at 51:18 & 11:7-8 (Testimony of Counsel for the Commission) (available at JA235 and JA194 in No. 13-4263 Joint Appendix). In response to the nonparty objections, the Commission would only commit to the position "that the information may generally be relevant" and reserved its "right to object to specific documents in future proceedings on the grounds of relevance." JA154 (n.2). Even more recently, before this Court, the Commission again conceded that it never reviewed the more than 5.78 million documents it produced "[d]ue to the staggering burden" that such a review would have imposed. Case No. 13-4206 (2d Cir.), Dkt. 40, at 4. Likewise, noting the "sheer volume" of records, the Commission admitted that it did "not review[]" the thousands of hours of nonparty audio files, yet still somehow felt it could produce them. *Id.* Unsurprisingly, without any party able to comment on just what all was in the millions of items the class-action plaintiffs requested, the district court could only make a sweeping generalization that the nonparty documents class-action plaintiffs sought were relevant to their claims. *See* JA168-JA169.

By failing to require a meaningful review of the documents at issue, the court effectively relieved the class-action plaintiffs of their burden to show the relevance of the highly confidential information they sought.  This leaves out an integral part of Rule 26(c)'s "three-step analysis" by which, once the party resisting discovery identifies protected proprietary information, the disclosure of which would harm its interests, "the burden shifts to the party seeking discovery to demonstrate that the information sought is relevant and necessary."  *Madanes v. Madanes*, 186 F.R.D. 279, 288 (S.D.N.Y. 1999) (citing *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991)).  Only if the party seeking discovery meets that particularized burden does the court then balance each side's relative interests.  *Id.*; *see also, e.g.*, *Duplan Corp. v. Deering Milliken*, 397 F. Supp. 1146, 1185 (D.S.C. 1974) ("Once the privilege is asserted by the owner, the party seeking discovery must make a clear showing that the documents are relevant to the issues involved in this litigation.  In doubtful situations, production will not be ordered.").[2]

---

[2]  Relevance is the touchstone of discovery:  "Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense"; "[f]or good cause, the court may order discovery of any matter *relevant* to the subject matter involved in the action; "*[r]elevant* information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1) (emphasis added).

It is, after all, the party seeking discovery who must "demonstrate that its need for the information, and the harm that it would suffer from the denial of such information, outweigh the injury that disclosure would cause either the other party or the interests cited by it." *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985); *accord Duplan*, 397 F. Supp. at 1185 ("[S]tandard [for discovery of confidential business matters] is higher than the hurdle for discovery of unprivileged but relevant documents . . . ."); *see also Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D. 528, 530 (E.D. Wis. 1990) ("If it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause.") (citation omitted); *cf. In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011) (noting heightened standard for discovery of mediation communications in light of the "important feature" of "[c]onfidentiality").

Given the agency's failure to review the nonparty documents it simply handed over, it was impossible to make any particularized determination of relevance. But courts cannot abrogate the duty of the party seeking (highly confidential) information from the burden of showing relevance by allowing it to treat *over five million* nonparty documents and thousands of hours of audio recordings as if they were a monolithic block. *See, e.g.*, *Marshall v. Westinghouse*

17

*Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (holding that a party seeking to discover a broad range of documents must be held to the higher standard of showing "more particularized need and relevance"); *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996) (examining with particularity the discovery requests and determining that the party does not "have needs sufficient to justify many of the sweeping demands").

Indeed, a proper assessment of particularized relevance is especially necessary when the discovery sought consists of an unusually large number of documents—what the Commission characterized here as a "sheer volume" and "staggering burden," Case No. 13-4206 (2d Cir.), Dkt. 40, at 4. *See, e.g.*, *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992) ("[Plaintiff's] demand[ of] millions of pages of documents concerning every aspect of [defendant's] relationships with private power suppliers, only a fraction of which could be deemed relevant to the subject matter of [its] fraud claim . . . [does not constitute a] 'specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence.'"); *cf.* *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) (construing "burden" to mean "the adverse consequences of the disclosure of sensitive, albeit unprivileged, material"). This fact is recognized across courts. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-Civ-6950, 2013 WL 5629831, at *9 (S.D.N.Y.

Oct. 15, 2013) (determining that courts have allowed "broader discovery . . . 'if the plaintiff can show a more particularized need for, and the likely relevance of, broader information.'") (quoting *Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 32 (D.D.C. 2010)); *cf. Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 954 (11th Cir. 1991) ("Absent a showing of 'particularized need and relevance' plaintiffs may not compel discovery from related corporations or even separate units of the same corporation.") (quoting *Marshall*, 576 F.2d at 592).  Yet the district court did not hold the parties to account.

### i.   A Proper Assessment of Relevance Is Particularly Important for Nonparty Discovery

A rigorous examination of the relevance of discovery is especially essential when, as here, "sweeping demands" (*Johnson*, 169 F.R.D. at 562) are made with respect to nonparties.  As one court put it, "[a]lthough discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation," but nonparties—rightly—"have a different set of expectations."  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). Like the nonparty from whom discovery was sought in *Cusumano*, Plains is a "stranger[]" to the Commission and Class Actions and "ha[s] no dog in th[ose] fight[s]."  *Id.*

Accordingly, numerous courts have recognized that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in

evaluating the balance of competing needs." *Id.* (collecting cases); *accord Rossini v. Argentina*, 453 F. App'x 22, 24 (2d Cir. 2011) (relevance determination is "especially" important "when seeking discovery from non-parties"); *see also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49, 52 (S.D.N.Y. 1996) (analyzing with particularity nonparty document request and determining request for documents to be "overbroad"); *BSN Med., Inc. v. Parker Med. Assocs., LLC*, No. 10 Misc. 15, 2011 WL 197217, at *2 (S.D.N.Y. Jan. 19, 2011) ("[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party.").

Nor is the burden lessened here because Parnon and the Commission, and not Plains, produced Plains's documents. As the Southern District put it: "The term 'burden' in Rule 26(b)(2) may be construed to limit disclosure where the burden is not measured in the time or expense required to respond to requested discovery, but lies instead in the adverse consequences of the disclosure of sensitive, albeit unprivileged, material." *Mitchell*, 227 F.R.D. at 239 (internal quotation marks and citation omitted).

### ii.    The Bulk of the Documents at Issue Are Not Relevant to the Class Action

Although the district court acknowledged some of the nonparties' objections and determined that certain broad categories of documents were relevant to the

class-action plaintiffs' claims, *see* JA167-JA168, it erroneously failed to address the relevance of the many other categories of documents identified by the objecting nonparties as irrelevant to those claims, *see, e.g.*, JA99-JA116, JA125 (CFTC investigative requests). Specifically, the district court concluded that three particular categories of documents were relevant to the class-action plaintiffs' claims: (1) documents showing "the perceptions and reactions" of nonparties to the alleged manipulation and monopolization claims; (2) information concerning activities "before and after the alleged manipulation," for the purpose of providing a "benchmark for activity in a non-manipulated market"; and (3) some documents relating to other types of crude oil to show "substitutability of other grades of crude oil." JA168-JA169. The district court did not address, however, how the numerous other categories of commercial information the nonparties produced to the Commission fit into those categories and are therefore properly discoverable.

For example, the court did not address Plains's objection to the production of non-public reports showing projections of its profits, revenues and losses; summaries of Plains's daily risk controls; Plains's risk management committee meeting agendas, minutes, and related meeting notes; and nearly two-years' worth of emails and documents concerning Plains's general business operations. *See, e.g.*, JA122, JA124-JA125; *see also* No. 11-cv-3600, Dkt. 147, at 28-29 (Transcript of July 1, 2013 Hearing) (available at JA212-JA213 in No. 13-4263 Joint

Appendix).  CCI objected to the production of its non-public, internal documents showing several years' worth of profits and losses, proprietary risk management tools and market strategies.  JA147-JA148.  Shell objected to the production of documents relating to its crude oil refineries, storage caverns to which it had access, and pipelines on which it transported crude oil.  JA132.  And Vitol objected to the production of similar information, as well as to the production of documents concerning commodities that are not at issue in either the Commission Action or the Class Action, and documents produced to the Commission in connection with a separate investigation.  JA90-JA94.

The class-action plaintiffs did not dispute that at least some of this information is irrelevant to the litigation.  *See, e.g.*, JA152-JA156.  Instead, they asserted that some of the information the nonparties objected to producing was relevant—in particular, that relating to other grades of crude oil and documents concerning conduct that occurred in the months immediately preceding and following Parnon's alleged misconduct.  *Id.*  For its part, the Commission admitted that some of the documents produced "maybe were not relevant."  No. 11-cv-3600, Dkt. 147, at 51:18 (available at JA235 in No. 13-4263 Joint Appendix).  That is unsurprising given that the agency obtained those documents as part of a *national* crude oil investigation, and prepared the production set from documents retained in "46 databases containing over 5.78 million documents," of which it reviewed only

22

a representative sample before production.  Case No. 13-4206 (2d Cir.), Dkt. 40, at 4; *see also* No. 11-cv-3600, Dkt. 147, at 14:17-18 (available at JA198 in No. 13-4263 Joint Appendix) ("I can't stand here and tell you that we have looked at all five million documents."); *id.* at 51:23-25 (No. 13-4263 JA235) ("The reason we didn't review [all of the audio files] is it's hundreds or tens of thousands of hours of audio involved in that."); *see also id.* at 11:7-8 (No. 13-4263 JA195).

Although the information produced to Parnon may have been responsive to requests made as part of the Commission's national investigation at one point in time, the Court should have undertaken an analysis, at a minimum, to determine if each of the categories of documents the nonparties objected to producing were also relevant to this litigation.  Had it done so, it would have had to conclude that the information described above is patently irrelevant to the class-action plaintiffs' claims that Parnon engaged in manipulative market activity.

Even if some of the documents (among millions) were potentially relevant to the plaintiffs' class-action certification motion, that is insufficient justification for producing millions of confidential nonparty documents as one indiscriminate mass. *See, e.g.*, *Norfolk Cnty. Ret. Sys. v. Ustian*, No. 07-C-7014, 2010 WL 1489996, at *2-3 (N.D. Ill. Apr. 13, 2010) (rejecting, in relevant part, class plaintiffs' attempt to "compel the production of documents they claim are relevant to their impending motion for class certification"—totaling "millions of pages"—because "[e]ven

23

assuming that some of the documents may be relevant to the issue . . . , it would certainly be burdensome . . . to try and locate them from among the millions of pages of materials," and it is not a solution to "just produce everything").

### 2.    A Protective Order Is Not a Substitute for Conducting the Requisite Relevance Analysis

The district's court failure to conduct a proper relevance analysis is not mitigated by the Class Action protective order negotiated by the parties, none of whom had an interest in protecting Plains's confidential information, without any involvement from Plains, even though its documents were at issue.  The propriety of the court's protective order necessarily turns on its relevance analysis.  After all, "[i]f the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed."  *In re Remington*, 952 F.2d at 1032.

As courts in this circuit have recognized, confidential documents are produced under a protective order limiting disclosure *only after* the party seeking discovery has first made a particularized showing of those documents' relevance to its claims.  *See, e.g.*, *Madanes*, 186 F.R.D. at 288 (describing the "three-step analysis" in Fed. R. Civ. P. 26(c)).  "If proof of relevancy or need is not established, discovery should be denied."  *E.g.*, *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981).  To date, *no party* has taken

on the task of showing whether and how many of the millions of particular confidential nonparty documents at issue are relevant to the class-action plaintiffs' claims. *See* pp. 2, 8, 14-15, 22-23, *supra*. The producing party typically has every incentive to hold the party seeking discovery of confidential materials it has in its possession to its burden of showing particularized relevance. *Cf. Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-cv-890, 2011 WL 2516935, at *2 (D. Utah June 23, 2011) ("The discovery system inherently requires the good faith efforts of all parties to make some determinations of relevance before producing discovery."). But here, neither the defendants nor the Commission had such an incentive, because the confidential information belonged not to them, but to *Plains* and other nonparties.

The disclosure order is thus insufficient to protect Plains's interests. Courts have long held that even the limited disclosure of confidential materials harms the entity whose confidences are revealed: With each new party who gains access to privileged documents, "the veil of secrecy is lifted higher by disclosure." *In re Grand Jury Investigation No. 78-184*, 642 F.2d 1184, 1188 (9th Cir. 1981); *cf. McMillan v. Togus Reg'l Office, Dep't of Veterans Affairs*, 294 F. Supp. 2d 305, 318-19 (E.D.N.Y. 2003) (discussing the negative effects of "[e]ven limited disclosure" of "confidential internal deliberations") (internal quotation marks and citation omitted). Plains is not, then, calling into question the parties' adherence to

the protective order; rather, Plains is seeking (as it has throughout this dispute) to *prevent* disclosure (and competitor review) of highly confidential information irrelevant to the claims below.  Without the benefit of *any* review, these five-million-plus confidential, nonparty documents could not and should not have been determined relevant to the class-action plaintiffs' claims.  Such a result does not accord with the black-letter admonishment that Rule 26's relevancy requirements are to be "firmly applied."  *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

### 3.  The Improper Disclosure Harmed Plains By Revealing Its Highly Sensitive Business Records

The documents at issue in this case contain Plains's proprietary business information, of the sort Plains keeps confidential and out of view of existing and potential competitors.  Plains's productions to the Commission included the company's risk management reports, profit-and-loss statements, audit materials, third-party contracts, and financial summaries—all of which courts have recognized can constitute protected trade secrets.  It is, for instance, well-established that trade-secret protection extends to a "broad spectrum of internal corporate documents."  *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 144 (S.D.N.Y. 1997); *see also Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740-41 (Fed. Cir. 1987) (trade-secret protection includes pricing information and sales data); *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 599-600 (E.D.N.Y. 2000) (equating "proprietary information" with

26

"trade secrets"). Indeed, Plains's confidential business information qualifies as protectable trade secrets under the laws of every jurisdiction conceivably applicable to this dispute. *See Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (New York law); *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 610 (5th Cir. 2011) (Texas law); *Merck & Co., Inc. v. SmithKline Beecham Pharms. Co.*, No. C.A. 15443-NC, 1999 WL 669354, at *15 (Del. Ch. Aug. 5, 1999) (Delaware law); *Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 8 (D.D.C. 2004) (DC law).

The district court failed to recognize the significant harms occasioned by further disclosure (and competitor review) of nonparty proprietary information. Although the court paid lip service to the fact that "even 'stale' business information can be valuable in the hands of competitors," JA168, it nonetheless discounted the potential for any harm, and in doing so missed the point of what it means to protect confidential information:   Plains's documents, even though several years old, provide a road map for Plains's business strategies.   They demonstrate how Plains makes pricing decisions, its profit margins, and its hedging and risk-management strategies.   There is no reason to doubt the harm to Plains from having this information in the hands of competitor class-action plaintiffs. The harm from such disclosure is very real; the value of the information to Plains is extraordinary.   Widespread knowledge of how Plains operates its business could

27

"alter [its] competitive position" in its market. *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1034-35 (S.D.N.Y. 1993). Courts have consistently recognized the harm in releasing confidential information to competitors, and have incorporated that into the discovery analysis. *See, e.g.*, *Am. Standard*, 828 F.3d at 741 (surveying cases); *Advanced Semiconductor Prods., Inc. v. Tau Labs., Inc.*, 229 U.S.P.Q. 222, 224 (N.D. Cal. 1986) (applying more-stringent relevance test in light of the fact that discovery would reveal confidential information to competitor); *Everco Indus. v. O.E.M. Prods. Co.*, 362 F. Supp. 204, 206 (N.D. Ill. 1973) (treating parties' status as competitors as a factor in denying discovery of confidential information); *see also United States v. United Fruit Co.*, 410 F.2d 553, 557 & n.11 (5th Cir. 1969) (limiting disclosure of financial and marketing data to competitors).

The district court intimated that Plains's interest in protecting its proprietary information from further review was somehow lessened because of the Commission's earlier disclosure to Parnon. For instance, the district court's statement that "Parnon itself competes with many of the nonparty objectors and already possesses the documents at issue," JA167, appears to suggest that Parnon's possession of this information undercuts Plains's right to try to protect it from further disclosure. But that is not the law. The owner must only make "reasonable efforts to safeguard the confidentiality" of its information. *E.g.*, *Catalyst & Chem.*

*Servs.*, 350 F. Supp. 2d at 8; *accord Merck & Co., Inc.*, 1999 WL 669354 at *15. That is to say, "[a]n owner is not required to maintain absolute secrecy to retain trade secret protection." *Catalyst & Chem. Servs.,* 350 F. Supp. 2d at 10. Throughout this entire ordeal, Plains has taken great steps to protect its information, including, for example, designating it "Confidential Treatment Requested" and exempt from FOIA during the initial production to the Commission; designating it "Highly Confidential" under the protective order in the Commission Action, *see* JA125-JA126 (¶ 8), and resisting its disclosure in the Class Action both before the district court and this Court.

**B.    The Court Should Have Required the Plaintiffs to Seek Any of Plains's Documents Relevant to Its Claims through the Traditional Route of Nonparty Discovery**

In the typical case, if a party identifies nonparty documents relevant to its claim, it serves discovery requests *on the nonparty*, who can then conduct an appropriate review of its confidential documents and produce those that are relevant. *See, e.g.*, *United States v. Treacy*, 639 F.3d 32, 41-42 (2d Cir. 2011); *Arista Records LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). Here, however, the class-action plaintiffs sought an end-run around traditional discovery rules through a blanket request to Parnon for the millions of nonparty documents the Commission had in its possession.

But just because the information was produced through a government agency does not mean that the class-action plaintiffs are thereby relieved of the requirement to identify with particularity the relevance of the documents sought. As one court put it, those seeking discovery in such a situation "must do their own work" by "mak[ing] proper requests describing the information in which they are interested." *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (denying plaintiffs' motion to compel where plaintiffs requested "all documents received from or provided to" a particular government agency); *see also In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417, 2007 WL 2127577, at *5-6 (N.D. Cal. July 24, 2007) (granting motion to stay discovery where plaintiffs had requested all documents previously produced to a particular government agency, noting that the defendants held a legitimate interest in maintaining the confidentiality of their records, and should have the opportunity to identify and assert objections against plaintiffs that were not against the government). By seeking discovery of *all of* Plains's documents before the Commission, the class-action plaintiffs outsourced the relevancy determination to the agency. In that situation, any relevancy determination by the plaintiffs is necessarily predicated on the relevancy determination made by the agency—which never reviewed the documents. *See* pp. 2, 8, 14-15, 22-23, *supra*.

There are, moreover, sound policy reasons for discouraging the use of government agencies as guardians of confidential third-party business records that later plaintiffs can use to circumvent normal channels of nonparty discovery. For one, it would interfere with what one court of appeals referred to as the "public interest in 'upholding the inviolability of trade secrets.'" *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010) (citation omitted). But even more so, it would discourage sharing privileged information with the government. There is, of course, "a strong public interest in encouraging disclosure and cooperation with law enforcement agencies." *Police and Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06-civ-5797, 2010 WL 935317, at *2 (S.D.N.Y. Mar. 12, 2010). "[V]iolating a cooperating party's confidentiality expectations jeopardizes this public interest." *Id.* For the district court to condone just such a violation sends the message that companies can only ensure that their confidential, proprietary materials will not be shared with third-party civil litigants by refusing to cooperate with a government investigation.

The Commission has taken the position in this dispute that Plains cannot be heard to complain about the agency's disclosure, however, because Plains was "put on notice" that the information it provided the government "would be subject to 'routine uses.'" Case No. 13-4206 (2d Cir.), Dkt. 40, at 14; *see also* JA159 (agency may make "the appropriate use of [the nonparty] documents as it deems

31

appropriate"). But even if "routine uses" were somehow interpreted to encompass mass unreviewed data dumps in private actions to which the Commission is not even a party, the Commission's position overlooks Plains's consistent attempts to protect its information from disclosure. *See, e.g.*, JA124, JA125 (¶¶ 4, 8) (Plains timely notified the Commission that its documents are exempt from disclosure in response to FOIA requests); *cf., e.g.*, *In re Al Fayed*, 36 F. Supp. 2d 694, 695-96 (D. Md. 1999) ("[W]here discovery is sought from the Government as a non-party, the courts must accord the proper weight to statutes and policies such as FOIA that exempt certain material from public disclosure. In some ordinary civil cases, the appropriate procedure might be to conduct in camera review of FOIA-exempt documents . . . .") (internal quotation marks and citation omitted).

## C.    This Court Can Fashion Appropriate Relief

Plains has taken every conceivable step to prevent the disclosure of its proprietary business records, particularly to the class-action plaintiffs. At all times, it acted expeditiously. Plains first sought to avoid this precise type of situation by making sure that the documents it provided to the Commission for its investigation were protected from FOIA requests. *See* JA124 (¶ 4). Once Plains found out about the Commission's plans to hand over its records wholesale to any and all who asked, it immediately challenged the discovery request in court. JA117-JA122. When the district court denied Plains's challenge, it immediately filed a

notice of appeal, JA172-JA175, and a motion to stay pending expedited appeal in this Court, No. 13-4206, Dkt. 22.  And when that motion was denied, No. 13-4206, Dkt. 125, Plains set a schedule to file this brief within just two weeks, *see* No. 13-4206, Dkt. 127.

Although Plains recognizes that this Court cannot undo the harm caused to it by documents already reviewed by the class-action plaintiffs, Plains maintains that it will still be able to receive appropriate relief from this Court, which enjoys broad powers to enjoin parties and nonparties with regard to discovery orders. *See, e.g.*, *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010).  The "proper remedy" for the improper disclosure of confidential information is "to restore the injured party as close as possible to the *status quo ante*." *U.S. Sec. & Exch. Comm'n v. Finazzo*, 543 F. Supp. 2d 224, 228 (S.D.N.Y. 2008).  To date, that confidential information has not been used by the class-action plaintiffs in a court proceeding, *see, e.g.*, *S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 81-82 (2d Cir. 1990), and, given the sheer volume of nonparty records in this case, it is unlikely that all improperly disclosed documents will have been reviewed by the close of this appeal, *see, e.g.*, *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 422 n.6 (1983) (holding that courts "can grant partial relief by preventing further disclosure," where not all individuals had seen the disclosed materials) (citation

omitted); *accord Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992).

It is also possible to "fashion a meaningful remedy" by ordering the return of Plains's improperly disclosed materials. *In re Grand Jury Investigation*, 445 F. 3d 266, 270 (3d Cir. 2006). This Court has the power to grant such relief. *See, e.g.*, *In re Lafayette Radio Elec. Corp.*, 761 F.2d 84, 92 (2d Cir. 1985) ("[I]t is established that a federal court sitting in equity that has jurisdiction to issue a decree necessarily has ancillary and supplemental jurisdiction to enter orders and judgments designed to effectuate that decree . . . ."); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 422 (E.D.N.Y. 2007) (holding that federal courts enjoy the power to order return of discovery materials they determine a party should not have in its possession).

This case, moreover, concerns an issue much greater than just the particular documents released here. A government agency that can compel production of a regulated entity's confidential business records through the power of subpoena released those documents, wholesale, to a group of class-action plaintiffs without any concern for the nonparty's confidential information, and without even making any threshold determination of those records' relevance to that case. *See* pp. 2, 8, 14-15, 22-23, *supra*. Important issues such as this, that are capable of repetition yet evade review, trigger an exception to the traditional mootness doctrine. *See,*

34

*e.g.*, *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 692 (2d Cir. 2013) ("'The exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'") (quoting *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)).

Courts have consistently recognized that discovery-order disputes, by their very nature, fall within the requisite limited timeframe to satisfy prong one. *See, e.g.*, *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1329 (D.C. Cir. 1985) (Scalia, J.) ("Without considering the possibility of expedited review (which would of course make the 'evading review' test virtually impossible to meet) . . . [t]he interval of time that typically elapses between the beginning of discovery and the completion of trial in a civil case is hard to measure, but it is safe to conclude that it is less than two years, which the Supreme Court has held short enough to cause action which would be mooted if not reviewed within that time to evade review."); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 5 (1st Cir. 1986) ("A protective order issued to prevent public dissemination of discovery information prior to trial . . . is likely to be 'too short in its duration to permit full review.'") (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 377 (1979)). Furthermore, there can be little doubt that Plains will continue to be subjected to the Commission's broad subpoena power to conduct investigations. *See* 17 C.F.R.

§§ 11.2, 11.4. As an entity subject to the Commission's regulation, Plains frequently receives subpoenas requesting documents related to various types of crude oil futures market transactions, like the ones the agency issued in its investigation here, *cf.* JA99-JA116 (CFTC requests of Valero); JA125 (¶ 7) (CFTC requests of Plains), which more often than not result in the release of many confidential business records, *cf., e.g.*, *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) ("For purposes of an administrative subpoena, the notion of relevancy is a broad one."). This Court's opinion, then, could provide prospective relief for Plains and the other nonparties by holding that the Commission cannot simply turn over millions of confidential business records it has in its possession to private litigants without at the very least reviewing those documents for relevance (or allowing the nonparties to do so), as well as that private litigants cannot use a government agency's expansive subpoena power to skirt traditional modes of nonparty discovery.

## CONCLUSION

For the foregoing reasons, Appellant Plains All-American Pipeline, L.P. respectfully requests that this Court vacate the district court's October 25 order, and enjoin the parties from further reviewing Plains's improperly disclosed confidential business records.

36

Respectfully submitted,

/s/ Hilary L. Preston

Eric A. White
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037-1701
(202) 639-6500

Hilary L. Preston
   *Counsel of Record*
Armita S. Cohen
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
(212) 237-0000

*Counsel for Appellant Plains All American Pipeline, L.P.*

December 23, 2013

## **STATEMENT CONCERNING ORAL ARGUMENT**

Counsel for Appellant Plains All-American Pipeline, L.P. respectfully request oral argument.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I certify the following:

This brief complies with the type-volume limitations of Fed. R. App. P. 29(d) because it contains 8,377 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

/s/ Eric A. White

*Counsel for Appellant*
*Plains All American Pipeline, L.P.*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date hereof, the foregoing was filed using the Court's CM/ECF system, which served a copy of the document on all counsel of record.


/s/ Eric A. White _____

*Counsel for Appellant*
*Plains All American Pipeline, L.P.*